IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-02368-WYD-MJW

JEFFREY URBANIC, an individual,

      Plaintiff,

v.

THE TRAVELERS INSURANCE COMPANY, a Delaware corporation,

      Defendant.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on Defendant Travelers' (hereinafter

referred to as "Defendant" or "Travelers") Motion to Dismiss and Compel Arbitration

(ECF No. 12), filed November 12, 2011.  Plaintiff filed a response and Defendant filed a

reply in support of its motion.  After carefully considering the pleadings submitted by

both parties, I find that the arbitration agreement is valid and thus, this matter should be

stayed pending arbitration.

II.    <u>BACKGROUND</u>

On September 28, 2010, Plaintiff filed the instant action alleging that Travelers

terminated his employment in retaliation for Plaintiff both exercising his rights under the

Family and Medical Leave Act ("FMLA") and for voicing his concerns over unfair and

illegal settlement practices.  Plaintiff asserts the following five claims for relief arising out

of his employment with Travelers and subsequent termination: (1) a federal claim under

the FMLA—Interference with Rights; (2) a second federal claim under the

FMLA—Retaliation; (3) a claim for wrongful discharge in violation of public policy under

Colorado law; (4) a claim for breach of contract under Colorado law; and (5) a claim for

promissory estoppel under Colorado law.  Travelers has moved to dismiss the

Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or in the

alternative stay these proceedings pending the outcome of arbitration.

III.   TRAVELERS' MOTION TO DISMISS AND COMPEL ARBITRATION

     A.   Plaintiff's Agreement to Arbitrate

In its motion to dismiss and compel arbitration, Travelers alleges that beginning

in 1994, and as recently as 2006, 2007, 2008 and 2009, Plaintiff repeatedly agreed as

part of his ongoing employment with Travelers that he would arbitrate any disputes with

Travelers.  (Def.'s Ex. A.)

Plaintiff began his employment with Travelers in 1992.  Travelers states that

beginning in at least 1994, Plaintiff's employment was conditioned as his agreement to

abide by the terms of the Travelers' Employment Arbitration program.  (Def.'s Ex. A,

Declaration of Cecil Murphy ¶ 3.)  In 2005, John Clifford, Travelers' Executive Vice

President of Human Resources, advised all Travelers' employees that there were

changes being made to the company's Arbitration Policy.  (Def.'s Ex. A, Declaration of

Cecil Murphy ¶ 3.)  Specifically, on April 1, 2005, Clifford sent an email to all employees

which reads in relevant part:

> I want to take this opportunity to announce some important
> changes to our existing dispute resolution procedures and
> the adoption of a binding arbitration process.  Travelers was
> among the first insurance companies to adopt an internal

procedure to ensure that all employees had an avenue to resolve employment concerns and to provide employees neutral, binding arbitration.

St. Paul Travelers will adopt similar Dispute Resolution and Employment Arbitration policies for its United States employees.  A link to both of these policies is provided below.  Please read them carefully and contact your manager or Human Resources representative if you have any questions.

(Def.'s Ex. A-1.)  The email went on to detail the arbitration procedure and advise all employees that "[a]rbitration is an essential element of your employment relationship and a condition of employment."  (Def.'s Ex. A ¶5, A-1.)  At the end of the text of the email, there was a link to the actual Arbitration Policy ("Arbitration Policy" or "Arbitration Agreement") that is found on the Travelers' intranet.  (Def.'s Ex. A ¶5, A-1.)  Since 2005, the Arbitration Policy has been posted on the Travelers' Intranet, to which all employees, including Plaintiff, have unlimited access.  (Def.'s Ex. A ¶5, A-1.)

Travelers goes on to state that on December 31, 2007, Clifford sent a second email to all employees indicating that changes had been made to Travelers' Arbitration Policy.  (Def.'s Ex. A ¶6, A-2.)  This second email communication contained a link to the Travelers' Arbitration Policy and required all employees, including Plaintiff, to acknowledge receipt and review of the updated policy by clicking on the link.  (Def.'s Ex. A ¶¶6-7, A-2.)  Travelers submitted records indicating that on January 10, 2008, Plaintiff opened Clifford's December 31, 2007 email and then clicked on the embedded link regarding employee policies including the Arbitration Policy.  (Def.'s Ex. A ¶8, A-2.)  By clicking on the link and acknowledging receipt of the email, Plaintiff indicated that he had read, understood and agreed to abide by the updated Arbitration Policy.  (Def.'s Ex.

A ¶ 8, A-2.)

In addition to the emails sent to Plaintiff advising him of his required compliance with the Arbitration Policy as a condition of continued employment, Travelers asserts that Plaintiff was also required to review and agree to the Code of Business Conduct and Ethics ("Code").  (Def.'s Ex. C, Declaration of Peter D. Bernstein ¶ 3.)  Since at least 2006, the Code has expressly referenced and incorporated Travelers' Arbitration Policy, and has mandated annual on-line compliance with and acceptance of the terms of the Code as a condition of employment.  (*Id.* ¶¶ 3-7.)  Specifically, the Code reads in relevant part:

> **Certification Obligations**
>
> All employees, officers and directors are required as a condition of continued employment to annually certify their adherence to the Code of Conduct and all policies referenced herein.
> . . .
> Certification of the Code of Conduct signifies, among other things, that you understand and agree to comply with the Code of Conduct and all Company policies.  The Company's policies and procedures, including but not limited to . . . the Employment Arbitration Policy and the Code of Conduct for System Users are also available for your review on Inside.
>
> Failure to adhere to the Code of Conduct and its associated obligations may subject you to disciplinary action up to and including termination of your employment.

(Def.'s Ex. C ¶ 4, C-1 at 2.)  The Code specifically addresses the Arbitration Policy as follows:

> **Employee Policies and Dispute Resolution**
>
> To meet its commitment to fair and equitable employment practices, Travelers has issued the Employee Policy Guide, the

Internal Dispute Resolution Policy and the Employment
Arbitration Policy to provide you with expectations and standards
for employee behavior and a means for dispute resolution.
Adherence to these policies and procedures is a condition of
employment. These policies are available for your review on
Inside and, as an employee, you are expected to read them,
understand them and comply with them.

(Def.'s Ex. C ¶ 4, C-1 at 12.)  Finally, the Code requires all employees to certify that

they have reviewed and understand the Code and all policies referenced therein.

In order to certify their receipt, review and agreement to the Code, all Travelers

employees are required to annually complete an on-line compliance training program

administered by an independent third party vendor.  (Def.'s Ex. C ¶ 7.)  Travelers states

that the annual compliance training is initiated by an email to all employees with a link to

the training course.  All employees are required to complete the training and certification

of completion.  (Def.'s Ex. C ¶ 8.)

The on-line training course begins when the employee clicks on the link located

in the text of the email.  The course provides information about the Code, and then

leads the employee through a series of vignettes about how the Code applies to

particular situations.  (Def.'s Ex. C ¶ 9.)  Employees may review the actual text of the

Code at any time by clicking on a link located on each page of the training course.  After

the employee successfully completes the training course, the employee arrives at a

page containing a link to a .pdf version of the Code, which states: "If you have not yet

read the Code of Business Conduct and Ethics, please do so now.  Then click "Next" to

begin certification.  Thank you for doing your part to help us do business with integrity."

(Def.'s Ex. C ¶ 9.)

After clicking the "Next" button, a screen directs the employee to certify

compliance with the Code.  For example, the Certification screen for the 2008

compliance training course provided:

**Certification**

• I have read and understand the Code of Business
Conduct and Ethics and the policies incorporated
within and agree that I will comply with them.

• I have reported any violations or potential violations of the
Code of Business Conduct and Ethics.

• I will report future violations or potential violations of the
Code of Business Conduct and Ethics.

• I will report any potential conflicts of interest to my
manager and receive a written waiver from my manager,
legal counsel, or from the Chief Compliance Officer.

By clicking the "I Certify" button below, I certify that I am in
compliance with all of the above.

**I Certify**

If you are not ready to certify at this time, please click here to
return to the menu.
When you're ready to return to this certification, click
"Certify" on the menu.

(Def.'s Ex. C ¶ 10, Ex. C-2.)  Once an employee clicks "I Certify," the employee is taken

to a certification of course completion screen.  Employees have the option to print a

completion certificate that reaffirms their certification.  (Def.'s Ex. C ¶ 11.)  The

Certification screen for the 2009 training course was substantially identical to the 2008

Certification screen.  (Def.'s Ex. C ¶ 10.)  Travelers' vendor's records indicate that on

May 30, 2006, July 26, 2007, February 8, 2008 and February 24, 2009, Plaintiff

completed the on-line training course and certified his receipt, review and agreement

with the Code.  (Def.'s Ex. C ¶ 12, Ex. C-3.)  Travelers further asserts that by

completing the on-line compliance training course, Plaintiff certified that he agreed to

comply with all policies set forth in the Code, including the Employment Arbitration

Policy.  (Def.'s Ex. C ¶ 12.)

     B.    <u>The Arbitration Agreement</u>

     The Arbitration Agreement provides for arbitration before the American

Arbitration Association ("AAA").  (Def.'s Ex. A ¶ 9, A-2.)  Travelers asserts that while the

Arbitration Agreement largely incorporates the rules of the AAA, it also modifies certain

aspects not relevant to this case.  The scope of the policy is quite broad and is set forth

beginning on page 1 where it states:

> The [Arbitration Agreement] makes arbitration the required and
> exclusive forum for the resolution of all employment-related and
> compensation related disputes based on legally protected rights
> (i.e., statutory, contractual or common law rights) that may arise
> between an employee or former employee and the
> Company…including without limitation contractual claims and
> claims, demands or actions under…the Family and Medical Leave
> Act of 1993…and any other federal, state or local statute,
> regulation or common law doctrine regarding employment
> discrimination, conditions of employment, or termination of
> employment.
>
> Unless otherwise stated herein, the only disputes not covered by
> the Policy are claims that an employee or former employee may
> have regarding workers' compensation, unemployment
> compensation benefits, or claims subject to the Employment
> Retirement Income Security Act of 1974 and all amendments
> thereto.

(Def.'s Ex. A-2 at 1.)  The Arbitration Policy specifically requires that both Travelers and

the employee arbitrate any dispute that arises except for workers' compensation and

unemployment compensation claims or claims related to the Employment Retirement Income Security Act of 1974.

      C.   <u>Plaintiff's Response</u>

In his response, Plaintiff disputes Travelers' argument.  Specifically, Plaintiff claims that he did not enter into an arbitration agreement with Travelers.  Plaintiff argues that even though he completed the mandatory on-line certification process, he was "wholly unaware of the Employment Arbitration Policy or that he was giving up numerous substantive rights for annually accepting an electronic version of the Code, as a continued requirement for his continued employment.  Indeed, Plaintiff was entirely unaware of the existence or the terms of the Employment Arbitration Policy until his counsel brought it to his attention."  (Resp. at 2-3.)  Because Plaintiff maintains that he "never actually, or constructively, agreed to resolve his claims in arbitration," there is no valid or binding Arbitration Agreement between the parties.

IV.   <u>ANALYSIS</u>

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *Todd Holding Co., Inc. v. Super Value Stores, Inc.*, 744 F. Supp. 1025, 1026 (D. Colo. 1990).  Thus, the court must satisfy itself of subject matter jurisdiction before proceeding to the merits of a claim.  *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1309-10 (10th Cir. 1998).  "[T]he burden is on the party claiming jurisdiction to show it by a preponderance of the evidence."  *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir.1994).  "Mere conclusory allegations of jurisdiction are not enough."  *United States, ex rel.*

*Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1196, 1160 (10th Cir. 1999).

When a party moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the attack can be either a facial attack to the allegations of the complaint or a factual attack. *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). Where there is a facial attack, the Court must look to the factual allegations of the Complaint. *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971). In a factual attack, the court may consider matters outside the pleadings, and the motion is not converted to a motion for summary judgment. *Id.*; *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992). "The trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56." *Osborn v. United States*, 918 F.2d 724, 730 (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

"Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d at 730.

Turning to the case at hand, in its motion, Defendant Travelers argues that this case should be dismissed for lack of subject matter jurisdiction or in the alternative stayed pending arbitration. Travelers claims the since the parties entered into a valid arbitration agreement that applies to the claims asserted in this case, the matter should be dismissed or stayed pending arbitration.

A.    Whether Plaintiff Entered into a Valid Arbitration Agreement with Travelers

1.    Jurisdiction to Determine Validity of Arbitration Agreement

I first address whether I have jurisdiction to consider Travelers' Motion to Compel Arbitration.  Under the Federal Arbitration Act, if a party challenges the validity of an agreement to submit disputes to an arbitrator, the court must consider the challenge before ordering compliance with that agreement.  *Rent-a-Center v. Jackson*, 130 S.Ct 2772, 2778 (2010).  On the other hand, if a party challenges the enforceability of the agreement as a whole, that challenge is determined by the arbitrator.  *Id.*  "Courts should not assume that the parties agree to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotation marks omitted).

Travelers argues that Plaintiff must arbitrate his claims and that an arbitrator, not the Court, must determine whether the Arbitration Agreement requires arbitration.  "[T]he parties agreed to arbitrate before the AAA and also agreed to incorporate the AAA Employment Arbitration Rules.  Where a party consents to arbitration before the AAA, that party also consents to be bound by the procedural rules of the AAA unless the agreement says otherwise."  (Def.'s Mot. at 9.)  Travelers cites *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Terminix Int'l Co. v. Palmer*, 432 F.2d 1327, 1332 (11th Cir 2005); and *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) for the proposition that when "parties incorporate the AAA Rules into an arbitration agreement, the parties have clearly and unmistakably agreed that the determination of the arbitrability of the dispute must be decided by the

arbitrator, not the court."  (Def.'s Mot. at 9.)

Here, Travelers seeks to enforce the Arbitration Agreement that Plaintiff agreed

to on February 24, 2009.  The Arbitration Policy reads in part:

> Travelers values each of its employees and looks forward to
> good relations with, and among, all of its employees.
> Occasionally, however, disagreements may arise between
> an individual employee and the Company, or between one
> employee and another in a context that involves the
> Company.  The Company believes that the resolution of
> such disagreements will be best accomplished by internal
> dispute resolution and, where that fails, by arbitration
> conducted under the auspices of the American Arbitration
> Association ("AAA").  For these reasons, the Company has
> adopted this Employment Arbitration Policy ("Policy").  The
> policy applies to all persons employed by Travelers,
> including all subsidiary companies (collectively, the
> "Company"), as of April 1, 2005 and all employees joining
> the Company after that date.
> ...
>
> The Policy makes arbitration the required and exclusive
> forum for the resolution of all employment-related and
> compensation-related disputes based on legally protected
> rights (i.e., statutory, contractual or common law rights) that
> may arise between an employee ... and the Company ....

(Def.'s Ex. A-3 at 1.)  Based on my review of this language, while I find that Travelers'

Arbitration Agreement references the AAA, it does not expressly incorporate specific

AAA Rules, nor does it state that the validity of the Arbitration Agreement shall be

decided by the arbitrator.  Accordingly, I find that the Arbitration Agreement does not

contain a "clear and unmistakable" choice of arbitration of the validity of whether the

parties agreed to arbitrate.  Thus, I now turn to the issue of whether a valid arbitration

agreement exists.

2.   Whether a Valid Arbitration Agreement Exists

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 4.  A

motion to compel arbitration based on an arbitration agreement is governed by 9 U.S.C.

§ 4 which reads as follows:

> The court shall hear the parties, and upon being satisfied
> that the making of the agreement for arbitration or the failure
> to comply therewith is not in issue, the court shall make an
> order directing the parties to proceed to arbitration in
> accordance with the terms of the agreement.  . . .  If the
> making of the arbitration agreement or the failure, neglect, or
> refusal to perform the same be in issue, the court shall
> proceed summarily to the trial thereof.

9 U.S.C. § 4.  Accordingly, the Supreme Court has held that when the parties to an

agreement dispute whether arbitration is required by that agreement, a federal court

may only resolve the issue when the parties dispute the making of the arbitration

agreement itself.  *Id.*; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404

(1967).  "[A] federal court may consider only issues relating to the making and

performance of the agreement to arbitrate."  *Prima Paint Corp.*, 388 U.S. at 404.

This Court has previously held that when the dispute involves the formation of

the arbitration agreement itself, courts apply "a standard similar to that governing

motions for summary judgment."  *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211,

1213 (D. Colo. 2005) (citing *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257,

1262 (D. Kan. 2003)).  The defendant bears the initial burden of setting forth sufficient

evidence to demonstrate that an enforceable arbitration agreement exists.  *Id.*  Then,

the burden shifts to the plaintiff to show that there is a "genuine issue of material fact as

to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Id.* If the plaintiff fails to meet his burden, then arbitration is appropriate for all disputes covered by the arbitration agreement. However, if the plaintiff establishes a genuine issue of material fact, a jury trial "on the existence of the arbitration agreement is required." *Id.*

In determining whether a valid arbitration agreement exists, the Tenth Circuit relies on state law principles of contract formation to determine whether parties have agreed to arbitrate an issue or claim. *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1987). Thus, under Colorado law, contract formation principles govern whether parties have agreed to submit to arbitration. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). Specifically, "[a] contract is formed when an offer is made and accepted… and the agreement is supported by consideration…. Acceptance of an offer is generally defined as words or conduct that, when objectively viewed, manifest an intent to accept an offer." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) (internal citations omitted).

Turning to my analysis, I must first review whether Travelers satisfied its initial burden by submitting sufficient evidence to demonstrate that an enforceable arbitration agreement exists. As set forth in this Order, Travelers has submitted ample evidence in the form of sworn declarations, emails, relevant company documents including the Arbitration Policy itself, and records verifying Plaintiff's on-line compliance and certifications. Given the legal standard set forth in both *Stein* and *SmartText Corp.*, I find that after reviewing the afore-mentioned evidence, Travelers has met its initial

burden of demonstrating an enforceable arbitration agreement.  The burden now shifts

to Plaintiff to show that there is a genuine issue of material fact as to the making of the

agreement.  *Stein*, 396 F. Supp. 2d at 1213.

Plaintiff sets forth the following arguments as to why the arbitration agreement is

not enforceable: (1) he never read or executed the Arbitration Agreement, thus, it does

not exist; (2) the Arbitration Agreement is not incorporated in the Code; (3) the

Arbitration Agreement is illusory; and (4) enforcement of the Arbitration Agreement

would violate his rights to a jury trial and preclude him from seeking exemplary

damages.

With respect to Plaintiff's two initial arguments that he never read or executed the

Arbitration Agreement and that it is not incorporated in the Code, I find these arguments

lack merit.  The evidence in this case shows that Plaintiff repeatedly agreed to arbitrate

any dispute with Travelers.  Based on my review of the evidence, Plaintiff was advised

on six separate occasions of the existence of the Arbitration Agreement.  First, on April

1, 2005, Plaintiff received an email from Clifford advising him of changes to the

Arbitration Policy and that he was subject to a binding Arbitration Policy.  The email also

provided Plaintiff a link to the Arbitration Policy.  Second, on December 31, 2007,

Plaintiff received a second email containing a link to the Arbitration Policy.  Plaintiff

clicked on this link embedded in the email, indicating that he had read, understood, and

agreed to the terms of the policy.  Further, Plaintiff certified on at least four separate

occasions that he read and understood the Code and the policies incorporated within

and agreed to comply with those policies.  The Code expressly refers to and

incorporates the Arbitration Policy.  The Code requires employees to agree to and comply with the Arbitration Policy as a condition of continued employment.  (Def.'s Ex. C-1 at 12.)  Thus, the evidence overwhelmingly shows that Plaintiff was not only aware of the Arbitration Agreement, but that he agreed to be bound by its terms on multiple occasions.

I am similarly unpersuaded by Plaintiff's contention that he never read the Arbitration Agreement.  It is well settled that one who signs a contract without reading it is barred from claiming he or she is not bound by its terms.  *B & B Livery, Inc. v. Riehl*, 960 P.2d 134, 138 (Colo. 1998).  I further note that an electronic assent or agreement, as opposed to executing a piece of paper, has been found valid by many courts including this Court.  *See Grosvenor v. Qwest Commc'ns Int'l., Inc.*, 2010 WL 2396253 (D. Colo. 2010); *Hugger-Mugger LLC v. Netsuite, Inc.*, 2005 WL 2206128 (D. Utah 2005); *Mortgage Plus, Inc. v. DocMagic, Inc.*, 2004 WL 2331918 (D. Kan. 2004); and *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756, 781 (N.D. Tex. 2006).  I further note that Plaintiff fails to offer any controlling authority to the contrary.

Third, Plaintiff argues that the Arbitration Agreement is illusory, thus, unenforceable because Defendant is not bound by its terms.  The Tenth Circuit has held that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory."  *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002).  Here, the Arbitration Agreement states that

> [t]his policy does not require that the company institute
> arbitration and does not require that the Company follow the

steps of IDR before taking disciplinary action of any kind, including termination.  However, if an employee disagrees with any such disciplinary action and believes that such action violated his or her legally protected rights, he or she may institute proceedings in accordance with the Company's internal Dispute resolution Procedure or this Arbitration Policy, as appropriate.  The results of the arbitration process are final and binding on the employee and the Company.

(Def.'s Ex. A-3 at 2.)  However, the footnote to this provision goes to say that "[n]othing in this provision shall be construed to negate the mutuality of this agreement to arbitrate, and the Company explicitly agrees to arbitrate, pursuant to this Policy, any disputed disciplinary action after it has been taken."  (Def.'s Ex. A-3 at 8 n.1.)  I find that the language set forth in the footnote is sufficient to bind Defendant to the terms of the Arbitration Agreement, thereby rendering it not illusory.

Finally, Plaintiff argues that the Arbitration Agreement is unenforceable because he did not knowingly waive his rights to a jury trial or to seek exemplary damages.  An Arbitration Agreement constitutes a waiver of the right to a civil jury trial.  "A party waives its right to a jury trial by signing an agreement to arbitrate or by binding itself to arbitration as a nonsignatory through traditional principles of contract or agency law, and there is no constitutional right to a jury trial on claims which are required to be arbitrated pursuant to a valid arbitration provision." *Hicks v. Cadle Co.*, 2010 WL 4595711 *5 (D. Colo. 2010); *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, Inc.*, 384 F.3d 157, 164 (4th Cir. 2004).  Having found that Plaintiff agreed to the terms of the Arbitration Policy, I find that he waived his right to a jury trial.  Similarly, under Colorado law, "exemplary damages shall not be awarded in ... arbitration proceedings, even if the award or decision is enforced or approved in an action commenced in a court."  Colo.

Rev. Stat. § 13-21-102(5).  Thus, because Plaintiff agreed to be bound by the

Arbitration Policy, his claim that the agreement is invalid because he never waived his

right to seek exemplary damages is without merit.

Accordingly, I find that Plaintiff has failed to demonstrate a triable issue of fact as

to the validity of the Arbitration Agreement.  Thus, I find that an enforceable arbitration

agreement exists between Plaintiff and Defendant.

B.    Whether Plaintiff's Claims Are Subject to Arbitration

Having found that an enforceable arbitration agreement exists between the

parties, I now turn to the issue of whether Plaintiff's claims are subject to arbitration.

The Federal Arbitration Act ("FAA") was enacted "to reverse the long-standing

judicial hostility to arbitration agreements . . . and to place arbitration agreements upon

the same footing as other contracts."  *Gilmer v. Interstate/Johnson Corp.*, 500 U.S. 20,

24 (1991).  The FAA provides that "[a] written provision in any . . . contract evidencing a

transaction involving commerce to settle by arbitration a controversy thereafter arising

out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract."  9

U.S.C. § 2.  "There is a strong federal policy encouraging the expeditious and

inexpensive resolution of disputes through arbitration."  *Metz v. Merrill Lynch, Pierce,*

*Fenner & Smith, Inc.*, 39 F.3d 1482, 1488-89 (10th Cir. 1994).  Courts must interpret

arbitration clauses liberally, and all doubts must be resolved in favor of arbitration.

*Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 798 (10th Cir. 1995).  Thus,

"having made the bargain to arbitrate, the party should be held to it unless Congress

itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985).

Turning to the case at hand, the Arbitration Agreement "makes arbitration the required and exclusive forum for the resolution of all employment-related and compensation related disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and the Company ...." (Def.'s Ex. A-3 at 1.)  Here, since the parties agreed to arbitrate all employment-related disputes and guided by the strong federal policy encouraging arbitration, I find that Plaintiff's FMLA claims and his Colorado claims are subject to arbitration in accordance with the Arbitration Agreement.  Accordingly, this matter is stayed pending arbitration.

V.    CONCLUSION

Based on the foregoing, it is

ORDERED that Defendant Travelers' Motion to Dismiss and Compel Arbitration (ECF No. 12) is **DENIED IN PART AND GRANTED IN PART.**  The motion is denied to the extent it requests dismissal of this action.  The motion is granted to the extent it requests that this matter be stayed pending arbitration.  It is

FURTHER ORDERED that pursuant to 9 U.S.C. §§ 3-4, the parties shall proceed with arbitration in accordance with the Arbitration Agreement.  This Court shall retain jurisdiction until arbitration has been completed.  It is

FURTHER ORDERED that since the length of the arbitration process is

uncertain, I find that this case should be administratively closed pursuant to

D.C.COLO.LCivR 41.2 with leave to be reopened for good cause shown.  If no action is

taken to reopen this case before June 1, 2012, the case will be dismissed without

prejudice without any further notice to either party.

      Dated:  May 6, 2011

                                  BY THE COURT:


                                  s/ Wiley Y. Daniel_____
                                  Wiley Y. Daniel
                                  Chief United States District Judge